EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
JILL M. THAYER, State Bar No. 166428
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-5954
 Fax: (415) 703-1234
 Email: jill.thayer@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **ROBERT VERNON WOODS,**<br><br>Petitioner,<br><br>v.<br><br>**THOMAS FELKER, Warden,**<br><br>Respondent. | C 07-05144 CW (PR)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |

### STATEMENT OF THE CASE

By a complaint filed December 29, 2004, petitioner was charged with three counts of robbery (Cal. Pen. Code, § 211). The complaint further alleged petitioner had five prior strike (Cal. Pen. Code, § 667(b)-(i) & 1170.12) and three prior serious felony (Cal. Pen. Code, § 667(a)) convictions. CT 3-6. On April 26, 2005, petitioner waived his right to a preliminary hearing, pled guilty to all charges, and admitted the enhancement allegations. CT 17. On October 27, 2005, the court sentenced petitioner to 45 years consecutive to 75 years to life in state prison. CT 209.

On October 31, 2006, the California Court of Appeal affirmed the judgment in an unpublished opinion. Exh. 6. The California Supreme Court denied petitioner's petition for review on January 3, 2007. Exh. 8.

**STATEMENT OF FACTS**

The California Court of Appeal summarized the facts of the case as follows. Petitioner is referred to as appellant.

> Appellant was 44 years old when the trial court sentenced him to total term of 120 years to life, representing a three strikes term of 25 years to life plus 15 years for a serious felony enhancement for each of three bank robberies committed during December 2004. All three robberies were at Bank of America branches in San Jose. On December 10, appellant approached a teller at her window and handed her a note. The note said, "Merry Christmas, I need $100's and $50's." When the teller reached for $20 bills, which contained the bait money, appellant told her, "Only the hundreds and fifties." Appellant received $5,600 and left. At a different branch on December 21, appellant again approached a teller at her window and handed her a business card on which was written essentially the same message as in the first robbery. The teller complied as appellant repeated his demand in an agitated voice. Appellant left with over $11,000. On December 24, appellant entered another bank and said that he wanted to speak to the manager. He sat in a chair by the manager's desk and waited for the manager to finish her business with another customer. Then, he put a briefcase on her desk and slid a note toward her. He told her, "I need you to do what I'm asking you to do, one hundred thousand dollars in hundred dollar bills. I have a bomb." Appellant told the manager how to operate the briefcase. She took it to a counter and had a teller put bait money in it. Meanwhile, the manager pressed a panic alarm on her belt. She returned the briefcase to appellant. He opened it and said, "I told you one hundred thousand dollars!" The manager explained that to do that she would have to interrupt the tellers who were with customers and asked appellant if he wanted her to do that. Appellant closed his briefcase, wished her a Merry Christmas, and left with over $7,000. Appellant was apprehended riding in a taxicab with the briefcase and money a short time later.
>
> According to the probation report, appellant said that he had been directed to rob the banks by voices that he had been hearing since April 2001. In a letter to the court, appellant said, "I am very remorseful for what I have done. The crimes I committed were not done for profit or personal gain, but the spirit voices can be quite overwhelming." The probation report states that appellant said that he "gave most of the money away to family, friends, and to the homeless. He also purchased $3,000.00 in flowers for a friend's funeral."

Exh. 6 at 1-2.

The California Court of Appeal summarized the pertinent facts related to petitioner's sentencing, referring to petitioner as appellant, as follows.

> At the time of the imposition of the sentence challenged here appellant was also sentenced on a separate case for theft from an elder and contracting without a license. ([Cal.] Pen.Code, § 368, subd. (d), [Cal.] Bus. & Prof.Code, § 7028, subd. (a).) In that case, appellant did some yard work for a woman in her 90's and did not have a valid

license to perform this work. Appellant collected one check for $3,500 from the victim at the start of the work and another $3,500 check after working for an hour and a half. Appellant admitted to the probation officer that he had knowingly overcharged the victim for the work but said that he "did a competent and complete job."

Before sentencing, appellant filed a motion asking the court to reduce the theft from an elder charge to a misdemeanor and to dismiss appellant's strike priors. The motion described appellant's childhood. Appellant's father left him, appellant's mother, and appellant's three brothers. Appellant was sexually molested by his uncle. Appellant's mother married a man who was physically abusive to appellant and his brothers. Appellant began running away, drinking alcohol, and smoking marijuana. When he was 15, he was sent to the California Youth Authority for armed robbery, burglary, and forgery.

Appellant's first three strike priors were incurred in 1980 when appellant was residing in a drug treatment program. Appellant entered an Exxon gas station and asked the attendant for change. When the attendant opened the cash drawer, appellant told him he wanted all of the money and showed the attendant a blue steel revolver in his waistband. In the following two weeks, appellant followed the same procedure at a Payless gas station and a Photo Drive Up. Appellant was sentenced to four years in state prison for three counts of robbery.

In 1984, appellant and a friend "after days of binging on alcohol and cocaine" committed a residential burglary in which a handgun, ammunition, and other property were taken. According to the probation report in that case, appellant and a co-defendant were working as free lance tree trimmers "routinely going from door-to-door soliciting jobs and observing residences for future potential burglaries." Appellant was sentenced to seven years in state prison.[1] In 1992, appellant was convicted of making criminal threats to a woman he had been seeing socially and sentenced to 16 months in state prison.

In 2001 appellant got divorced, started smoking methamphetamine and crack cocaine, and began hearing voices. He attempted suicide by hanging himself in his mother's backyard and was hospitalized. In 2002, appellant began receiving treatment including medication from a mental health facility. Personnel there diagnosed appellant as "schizo effective, paranoid type." Taking the medication made it difficult for appellant to continue his tree-trimming business. In 2004, appellant was living in a facility for dual-diagnosed men. In August 2004, he left this program "fearful the rampant drug use occurring at the facility by other residents would cause him to relapse." Appellant committed the bank robberies four months later.

After a 15 to 20 minute discussion of this sentencing in chambers, and hearing argument from counsel, the trial court denied appellant's motion to dismiss the prior strike convictions. The trial court reviewed appellant's criminal history noting, "he has performed poorly on probation. He has 6 felonies and 18 misdemeanor prior convictions and he was on probation at the time of the present offense." The court considered appellant's "background, character, and prospects" noting that appellant was divorced and had no dependent children. As to the charges of theft from an elder

---

1. In the probation report prepared for the sentencing in the burglary, the probation officer wrote, "When questioned as to what his plans were for the future, [appellant] advised that he was going to serve the three and a half year estimated prison sentence, come back out on the street and more than likely end up back in prison again."

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ANSWER                     Woods v. Felker, Warden
                                                                       C 07-05144 CW (PR)

3

1  and contracting without a license, the court said that because those cases were not
serious or violent, because of appellant's mental illness and drug and alcohol
2  addiction, and because the codefendant had received a sentence of probation and 30
days on the weekend work program, the court would exercise its discretion to dismiss
3  the prior strike allegations. As to the bank robbery charges, however, the court said, "I
realize that Mr. Woods suffers from schizophrenia. The question in the Court's mind
4  is whether or not the public in passing the Three Strikes Law and . . . the legislature
had in mind people such as Mr. Woods coming within the meaning of the Three
5  Strikes Law. [¶] I believe that Mr. Woods is a person who should be taken from . . .
the potential of doing harm to those he comes in contact with. I believe that the best
6  place to do that is a prison facility which provides mental health services to a person
such as those in Mr. Woods' situation." The court declined to strike the prior strike
7  allegations and sentenced appellant as described above to a state prison term of 120
years to life with the recommendation that appellant "be housed in a State psychiatric
8  medical facility."

9  Exh. 6 at 3-5, footnote in original.

10                                    **ARGUMENT**

11                                          **I.**

12                                **STANDARD OF REVIEW**

13      Federal habeas corpus review of a state judgment is governed by the Antiterrorism and

14  Effective Death Penalty Act of 1996 (AEDPA). Under the AEDPA, the federal court has no

15  authority to grant habeas relief unless the state court's ruling was "contrary to, or involved an

16  unreasonable application of," clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

17  A state court's decision is "contrary to" law if the state court arrives at a conclusion opposite to that

18  reached by the Supreme Court on a question of law, or reaches a different conclusion based on facts

19  materially indistinguishable from a Supreme Court case. *Williams v. Taylor*, 529 U.S. 362, 413

20  (2000). A state court's decision constitutes an "unreasonable application" of Supreme Court

21  precedent if the state court identifies the correct governing legal principles, but the application of

22  law to the facts is not merely erroneous but objectively unreasonable. *Id.* at 411-13. State courts

23  are presumed to know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

24      In addition, the AEDPA limits the basis for federal habeas relief exclusively to "clearly

25  established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

26  ///

27  ///

28  ///

2254(d)(1). This refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams* at 412.

## II.

**PETITIONER'S CLAIM THAT THE STATE COURT ABUSED ITS DISCRETION IN SENTENCING DOES NOT STATE A COGNIZABLE FEDERAL DUE PROCESS ISSUE**

Petitioner claims the trial court abused its discretion in refusing to dismiss multiple prior strike convictions in violation of due process and fundamental fairness in sentencing. Pet. at 6. His claim is not cognizable.

Federal habeas corpus relief is not available to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "Absent fundamental unfairness, federal habeas relief is not available for a state court's misapplication of its own sentencing laws." *Ely v. Terhune*, 125 F.Supp.2d 403, 411 (C.D. Cal. 2000) (holding claim that state court erred by refusing to strike prior strike conviction did not state federal question); *accord*, *Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), *overruled on other grounds*, 538 U.S. 901 (2003). Accordingly, petitioner's claim is not cognizable on federal habeas corpus.

## III.

**THE STATE COURT'S AFFIRMANCE OF PETITIONER'S SENTENCE WAS NOT AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT AUTHORITY**

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the United States Supreme Court considered whether the California Court of Appeal's decision affirming the defendant's sentence of 50 years to life in prison for two counts of petty theft with a prior conviction was contrary to, or an unreasonable application of, clearly established United States Supreme Court authority. The defendant had stolen $153.44 worth of videotapes from two stores. *Id.* at 66. He had three prior strikes for residential first-degree burglary. *Id.* at 68. The Court acknowledged a lack of clearly established Supreme Court authority "in determining whether a particular sentence for a term of years can violate the Eighth Amendment." *Id.* at 72. The only relevant, clearly established Supreme Court authority is the "gross disproportionality principle, the precise contours of which are unclear,

applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73.  The Court held that it was not contrary to clearly established law for the California Court of Appeal to rely on *Rummel v. Estelle*, 445 U.S. 263 (1980) "in deciding whether a sentence is grossly disproportionate." *Id.* The Court concluded that it was not unreasonable to affirm the defendant's sentence of two consecutive 25 years to life terms for the two petty theft convictions with three prior strike convictions. *Id.* at 77.

In *Rummel*, the defendant was sentenced under a recidivist statute to life in prison with the possibility of parole upon his third theft-related felony conviction.  The United States Supreme Court, in upholding the constitutionality of the statute, stated: "[The] primary goals [of a recidivist statute] are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time.  This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes.  Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." *Id.* at pp. 284-285.  The Court upheld the constitutionality of the statute, characterizing it as "nothing more than a societal decision that when such a person commits yet another felony, he should be subjected to the admittedly serious penalty of incarceration for life, subject only to the State's judgment as to whether to grant him parole." *Id.* at p. 278.

In *Ewing v. California*, 538 U.S. 11, 18-19 (2003) (plur. opn. of O'Connor, J.), the defendant was convicted of felony grand theft for taking three golf clubs worth $399 each.  His criminal history included four prior strike convictions.  *Id.* at 19.  He was sentenced under California's three strikes law to 25 years to life.  *Id.* at 20.  "When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime. Nothing in the Eighth Amendment prohibits California from making that choice." *Id.* at 25.  The Court determined

that the sentence did not constitute cruel and unusual punishment. *Id.* at 30-31.

The California Court of Appeal's decision affirming petitioner's sentence was not an unreasonable application of clearly established United States Supreme Court authority. The state court properly relied on *Rummel*, *Andrade*, and *Ewing* in determining that petitioner's sentence does not constitute cruel and unusual punishment. Exh. 6 at 7-9. The court properly considered petitioner's three bank robberies on three separate occasions "far more serious than those at issue in *Rummel* and *Ewing*." Exh. 6 at 9. The court noted that petitioner's criminal history included six prior felony and 18 prior misdemeanor convictions. Exh. 6 at 9. The court's determination that petitioner's sentence of 120 years to life is not grossly disproportionate in light of his three current bank robbery convictions and history of committing serious felonies against others is not an unreasonable application of clearly established United States Supreme Court authority. Accordingly, petitioner is not entitled to federal habeas relief.

**CONCLUSION**

For the reasons stated above, respondent respectfully asks this Court to deny the petition for writ of habeas corpus.

Dated: December 17, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

PEGGY S. RUFFRA
Supervising Deputy Attorney General

/s/ JILL M. THAYER
Deputy Attorney General
Attorneys for Respondent

JMT/cfl
40197697.wpd
SF2007402969

MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF ANSWER             Woods v. Felker, Warden
                                                                C 07-05144 CW (PR)

